OPINION. Offer, Judge: Were it not for a single aspect, this proceeding would be identical in principle with Detroit Edison Co. v. Commissioner, 319 U. S. 98, and would similarly call for disallowance of the depreciation deducted by petitioner on extensions and connections paid for by its customers. The controversy here, which was not reached in the Supreme Court’s discussion of the Detroit Edison case, covers the extent to which petitioner’s obligation to refund the payments in question to its customers avoids the rule of that case. It might appear on superficial inspection that two classes of payments are involved — those which petitioner could no longer be compelled to return, and those which would still be returnable upon the specified conditions. Since, however, the view we take of the matter is otherwise, the two classes of payments will be dealt with together. In our estimation, the present situation can not in any respect be adequately removed from the scope of the Detroit Edison principle. The sums in question, whatever the condition of their repayment, were delivered to petitioner and 'used by it to construct the capital assets in question. To that extent they diminished the investment which petitioner, out of its own capital, incorporated in the improvements — in other words, its own cost under the rule of Detroit Edison Co. v. Commissioner. When, if ever, the sums were repaid, for whatever reason, petitioner’s investment would come into existence, but not until then. See Reisinger v. Commissioner (C. C. A., 2d Cir.), 144 Fed. (2d) 475. Even though it kept its accounts on the accrual basis, the obligation to repay was at all times too speculative to constitute an accruable liability. To quote from the opinion of the Sixth Circuit Court of Appeals in the Detroit Edison case (131 Fed. (2d) 619, 622) : As the facts appear in the record, the refunds which petitioner had contracted[1] to make to its customers who had contributed the cost of the erection of the facilities were too indefinite in amount and time of payment to be capitalized as representative of their cost to the petitioner at the time such depreciable assets were constructed. There could then be no reasonable prediction as to the amount petitioner would ultimately refund. It is essential to the creation of an accruable liability or reserve that there be an agreement between the parties fixing the amount or that the amount due be determinable with reasonable certainty from the surrounding facts and circumstances. When the obligation is contingent, or indefinite as to amount, its accrual or payment is so uncertain that no charge can be made under any correct system of accounting. * * * [Citing cases.] As we have suggested, this eliminates the need for considering separately the payments as to which the ten-year period of limitation of all liability has already run. Even as to these, petitioner occasionally grants refunds, and respondent concedes that when this occurs, the amount constitutes a proper addition to basis.[2] Still less is it required that we eliminate the payments for connections to curb as being repayable indefinitely. When repaid they constitute cost, not before. The entire situation can thus adequately be dealt with by regarding petitioner’s cost as diminished by the total contributions of its customers, less, however, the aggregate of amounts previously returned by it at any given time. The depreciation deductions should be computed accordingly. Decision will be entered under Rule 50. The present petitioner concedes that in two out of the four classes of contracts described by the Circuit Court in the Detroit Edison case, some provision for refund under certain conditions existed. <■* * * jj. is to ¡,e noted, however, that the respondent does not say that the petitioner may not depreciate the sums voluntarily refunded because there was no legal obligation so to do; he merely states that until the refund is made there is no outlay by petitioner, nothing to depreciate.”